**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **CORY LEE PENCE and DENISE** | § | |
| **PENCE, Individually and as Next Friends** | § | |
| **of RILEY GENE PENCE, a Minor** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. L – 04 – CV – 68** |
| | § | |
| **LEXINGTON INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |

**<u>MEMORANDUM AND ORDER</u>**

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment [Doc. No. 29] and Defendant's Motion for Summary Judgment [Doc. No. 31].

**<u>Background</u>**

This case, calling for the exegesis of an insurance contract, comes before the Court under the auspices of an action for a declaratory judgment.

The Plaintiffs are a deceased minor and her parents, who are seeking a judgment from this Court clarifying the applicable dollar amount limit of an insurance contract issued by the Defendant.

The minor in question, Riley Gene Pence, deceased, was delivered at a hospital owned by Llano Bay Health Care (hereinafter "Llano Bay") on February 22, 2001 by Dr. Skylar Forrister, a physician family practitioner who was a proprietary member of an association of physicians

known as the Hoerster Clinic.  Due to complications during the delivery, Riley Gene Pence died

a little over a year later, on May 3, 2002.

The Plaintiffs filed suit in Texas state court alleging medical malpractice and named

Llano Bay, Dr. Forrister, and Hoerster Clinic as defendants.  While the state court proceeding

against Llano Bay has been "unofficially stayed" [Doc. No. 31, p. 5] pending the resolution of

this declaratory judgment action, the Plaintiffs settled their claims with Dr. Forrister and the

Hoerster clinic for $200,000 each.

### Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and

admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  The initial

burden, borne by the moving party, requires a showing to the Court of the basis for the motion,

as well as an identification of the portions of the record "which [the moving party] believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The Court reviews the record by drawing all inferences most favorable to the

party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587

(1986)(citing *United States v. Diebold, Inc.,* 369 U.S. 654 (1962)).

Once a moving party has met its burden, "an adverse party may not rest upon the mere

allegations or denials of the adverse party's pleading, but the adverse party's response . . . must

set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The

adverse party must show more than "some metaphysical doubt as to the material facts."

*Matsushita,* 475 U.S. at 586.  If an adverse party completely fails to make a showing sufficient to

2

establish an essential element of that party's case on which they will bear the burden of proof at trial, then all other facts are rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-323.  Hence, the granting of summary judgment involves a three-tier analysis.  First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. FED. R. CIV. P. 56(e).  An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  Second, the Court must ascertain whether that genuine issue pertains to material facts. FED. R. CIV. P. 56(e).  The substantive law of the case identifies the material facts; that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248.  Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. FED. R. CIV. P. 56(e).

### **Declaratory Judgment**

The Supreme Court has held that declaratory relief is appropriate under the Declaratory Judgment Act – 28 U.S.C. § 2201 – when "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Jabr v. Rapides Parish Sch. Bd. ex rel. Metoyer*, 171 F.Supp.2d 653, 665 (W.D.La. 2001)(citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  In addition, "[a] declaratory judgment is appropriate when it will 'terminate the controversy' giving rise on undisputed or relatively undisputed facts [and] it operates frequently as a summary proceeding." FED. R. CIV. P. 57 advisory committee's note.

In this case the parties both independently aver that no fact issues exist that would inform the matter for resolution here.  Summary judgment in this declaratory judgment action is therefore proper.

### Texas Contract Law

The jurisdiction of this Court in the instant action lies pursuant to authority granted under 28 U.S.C. § 1332 and by virtue of the fact that the Plaintiffs are residents of the State of Texas and the Defendant is incorporated under the rules of the State of Delaware.  In diversity cases such as this one, state law governs the interpretation of the contract. *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093 (5th Cir. 1995).  In Texas, insurance policies are contracts and are therefore governed by the principles of interpretation applicable to contracts. *Id.* (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987)).  The interpretation of an insurance policy is a question of law. *Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994)(citing *FDIC v. Barham*, 995 F.2d 600 (5th Cir. 1993)).

If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and is therefore construed as a matter of law. *Am. Mfr. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  Whether a contract is ambiguous is itself a question of law. *Id.* (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)).  An ambiguity does not arise simply because the parties offer conflicting interpretations. *Id.*; *see also Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).  An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations. *Id.* (citing *Kelley-Coppedge*, 980 S.W.2d at 465).

The court's primary goal in interpreting an insurance contract is to give effect to the written expression of the parties' intent. *Balandran v. Safeco. Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998); *see also Nat'l Union Fire Ins Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)("The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.").  The court must therefore "read all

parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran,* 972 S.W.2d at 741.  While parol evidence of the parties' intent is not admissible to create an ambiguity, "the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists." *Id.,* (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

If, after the application of these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous. *Id.*  Where an ambiguity involves an exclusionary provision of an insurance policy, a court must "adopt the construction . . . urged by the insured so long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Balandran*, 972 S.W.2d at 741 (citing *Nat'l Union Fire Ins. Co.,* 811 S.W.2d at 555); *see also Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987).

### **Endorsement #3**

Both parties agree that the resolution of this case necessitates an analysis of the applicability of a contract endorsement, labelled Endorsement #3.  That endorsement reads as follows:

> You shall require medical staff members defined as physicians, surgeons, dentists, podiatrist, psychologists, nurse practitioners, nurse midwives, perfusionists, physician assistants, speech therapists, respiratory therapists, physical therapists, optometrists, opticians, chiropractors, acupuncturists, paramedics and social workers to maintain insurance equal to or greater than $1,000,000 each claim/$3,000,000 annual aggregate.

> The Company's liability on any one claim shall not exceed the lowest "each claim" amount maintained by the medical staff member(s) who incurred the claim.  If the medical staff member(s) that incurred the claim does not have professional liability insurance, then there are not [sic] limits of coverage provided under this policy.

The Plaintiffs argue that Endorsement #3 does not apply to the underlying state case because, first, Dr. Forrister did not "incur the claim" and, second, the nurses who did incur the claim are not members of the medical staff referenced in Endorsement #3.  The Plaintiffs argue further that the term "claim" must refer to a claim for which Llano Bay, as the insured, is liable. Therefore, because Dr. Forrister is indisputably not an employee of Llano Bay, the hospital "can have no liability for any 'claim' incurred by Dr. Forrister." [Doc. No. 29, p. 11].  Thus, Endorsement #3, according to the Plaintiffs, does not apply to the instant claim against the Defendant, which arises not from the actions of Dr. Forrister, but from the actions of the nurses employed by the hospital.

The Defendant, on the other hand, argues that Dr. Forrister is a medical staff member as identified by Endorsement #3.  Further, they argue that Dr. Forrister's conduct was such that he can aptly be characterized as having "incurred the claim" under Endorsement #3.  Therefore, the Defendant argues, Endorsement #3 limits the Defendant's liability to the "lowest 'each claim' amount maintained by" Dr. Forrister.

The Plaintiffs do not dispute that Dr. Forrister is a medical staff member; the only reference in their brief to his status under the contract is the conclusion that he is an "independent contractor."  Generally, physicians are considered to be independent contractors with regard to hospitals where they enjoy staff privileges. *Baptist Mem'l Hosp. Sys. V. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998).  It is common knowledge that a physician with staff privileges is generally referred to as a medical staff member. *Ivey v. Galen Hosp. of Texas, Inc.,* 2000 WL 329900 (Tex.App. Mar. 30, 2000).  Therefore, status as an independent contractor does not preclude simultaneous classification as a "medical staff member."  Moreover, the plain language of Endorsement #3, as well as the context of the Endorsement within the overall contract – a

proper consideration under *Balandran,* 972 S.W.2d at 741 – suggests that the clause was designed to apply in cases exactly such as this.  Having determined that Dr. Forrister is a medical staff member to whom this endorsement applies, the next inquiry is whether he incurred the claim at issue here.

The language of the policy applies to medical staff members who "incurred the claim." The language does not specify, as the Plaintiffs argue, that the word "claim" actually means "claim for which the hospital is liable."  In fact, other sections of the policy employ terms and phrases such as: "covered claim" [Doc. No. 31, Ex. 1, Tab E, HPL-1(A)], "suit we defend," [Doc. No 31, Ex. 1, Tab E, p. 6], and "if we defend an insured against a suit" [Doc. No. 31, Ex. 1, Tab E, p. 7].  Certainly a "covered claim" is one "for which the hospital is liable."  Therefore, it is clear that the contracting parties knew the difference between the term "claim" and the phrase "claim for which the hospital was liable."  When the parties intended to mean the latter, they used terminology like "covered claim," and "suit we defend."  Thus, it is clear that the parties did not intend the term "claim," as used in Endorsement #3, to mean "claim for which the hospital is liable."

But, neither does the contract specify if the word "claim" refers to a legal claim or an insurance claim.  However, the distinction is irrelevant here, as Dr. Forrister did incur a claim in both senses.  His actions gave rise to a legal claim – by the Plaintiffs – and an insurance claim – both by Dr. Forrister against his insurance provider and by the nurses against the Defendant insurance company.  A common-sense reading of the endorsement would lead to the conclusion that Dr. Forrister did incur a claim.

The respective liability of the parties whose actions caused the injury which gave rise to the legal claim is not material here.  Similarly, the eventual disposition of the state case and its

attendant ascriptions of guilt or innocence are also irrelevant.  The endorsement applies to medical staff members who incurred claims; it does not specify that these claims must be winning legal claims.  Simply because the Plaintiffs argue for an interpretation that conflicts with the Defendant's – and the plain language of the contract – does not mean the contract is ambiguous. *See Am. Mfr. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d at 157.  Therefore, based on the only plausible reading of the exclusionary language, Dr. Forrister's actions triggered Endorsement #3.  The only remaining issue regarding applicability of Endorsement #3 is the amount of coverage provided under the contract.

### Coverage

Endorsement #3 reads, in pertinent part: "The Company's liability on any one claim shall not exceed the lowest 'each claim' amount maintained by the medical staff member(s) who incurred the claim."  Therefore, the contract calls for the Defendant's liability to mirror the smallest "each claim amount" maintained by Dr. Forrister.  Whether Dr. Forrister "maintained" coverage under only his individual policy or also under the policy issued to the Professional Association of which he was a partner is not material; the "each claim" amount of both policies is the same.  The Plaintiffs focus their argument on the meaning of the word "maintain;" more important, however, is the phrase "each claim amount."  The language of the contract refers to "*the*" lowest "each claim" amount, not the aggregate liability created by *the sum of all the* "each claim" amounts from all contracts which the medical staff member maintained.   The "each claim amount" refers to a specific monetary amount contained within an insurance contract – in this case the professional liability insurance contracts under which Dr. Forrister was insured.  It does not refer to the medical staff member's total coverage amount for one claim.  Therefore, the Defendant's liability is properly capped at $200,000.

**Conclusion**

It is the JUDGMENT of this Court that the Defendant's total potential liability under the contract at issue is $200,000.

IT IS SO ORDERED.

DONE on this 17th day of January, 2006, in Laredo, Texas.


_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE


TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.